IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SHAWN WALKER,<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§<br>§ | CIVIL ACTION NO. 2:23-cv-00156<br><br>JURY DEMANDED |
| LONGVIEW CABLE TELEVISION<br>COMPANY, INC.,<br>WEHCO VIDEO, INC. AND WEHCO<br>MEDIA, INC.<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§ | |

## PLAINTIFF'S ORGINAL COMPLAINT

Plaintiff Shawn Walker hereby files this, his Original Complaint, against Defendants Longview Cable Television Company, Inc., Wehco Video, Inc. and Wehco Media, Inc. for violating federal law. The causes of action and summary of claims relating thereto are addressed below:

### I.   PARTIES, JURISDICTION AND VENUE

1. Plaintiff Shawn Walker ("Plaintiff" or "Walker") is currently a citizen and resident of Gregg County, Texas.

2. Defendant Longview Cable Television Company, Inc. ("Longview Cable" or "Defendant") is a Texas corporation licensed to do business in Texas. Defendant's main offices are located at 711 N. High St., Longview, TX 75601. Defendant Longview Cable will be served by and through its registered agent for service, CT Corporation System, 1999 Bryan St #900, Dallas, TX 75201.

3. Defendant Wehco Video, Inc. ("Wehco Video" or "Defendant") is an Arkansas corporation not licensed to do business in Texas. Defendant Wehco Video's main offices are located at 115 East Capitol Avenue, Little Rock, AR 72201. Defendant Wehco Video will be served

by and through its registered agent for service, Alec Gaines, 400 W. Capitol Ave., Suite 2910, Little Rock, AR 72201.

4. Defendant Wehco Media, Inc. ("Wehco Media" or "Defendant") is an Arkansas corporation not licensed to do business in Texas. Defendant Wehco Media's main offices are located at 115 East Capitol Avenue, Little Rock, AR 72201. Defendant Wehco Media will be served by and through its registered agent for service, Alec Gaines, 400 W. Capitol Ave., Suite 2910, Little Rock, AR 72201.

5. Plaintiff Walker alleges that all Defendants were his joint employer.

6. This court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 & 1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391.

7. Most of the acts alleged herein occurred in Gregg County, Texas.

8. Plaintiff filed a Charge of Discrimination with the EEOC on or about August 29, 2022 alleging discrimination on the basis of an actual or perceived disability in violation of the Americans with Disabilities Act. More than 180 days have passed since he filed his Charge of Discrimination and a right to sue letter has been received by Plaintiff.

## II.  FACTUAL BACKGROUND

9. Longview Cable operates a cable TV internet company in the Longview and Kilgore, Texas areas, including parts of Harrison County, Texas. Longview Cable is wholly owned by Wehco Video. Wehco Video is a privately owned entity wholly owned by Wehco Media, a diversified communications company with interests in newspaper publishing, cable television, and digital services. The company has been family owned since its founding in 1909. It operates daily and weekly newspapers, magazines, and cable television companies in six states.[1] Plaintiff will

---

1 https://www.wehco.com/Index.html

refer to the Wehco entities collectively as "Wehco." Wehco conducts the hiring for Longview Cable via its website https://jobs.wehco.com/. Plaintiff Walker alleges that all Defendants were his joint employers.

10. Walker applied for a position with Defendants in July of 2022. He learned of the installer position through indeed.com. On July 1, 2022, Walker went for a first interview with Mark Johnson of Longview Kilgore Cable.  The interview went great.  They talked for about 30-45 minutes.  Mark explained the job to Walker and told him about advancement in the company as well and then offered Walker the job as an installer pending a background check and drug test.

11. When Walker left Mark's office, he went straight to the drug testing facility, the Drug and Alcohol Testing Compliance Service.  While filling out the paperwork, Walker told the nurse that he was on Methadone treatment.   The DATCS representative signed off on the paperwork and told Walker that if the facility needed anything further that they would contact him. The nurse also said that a negative test would be sent to Longview Kilgore Cable once the Clinic confirmed his methadone treatment.

12. On July 5, 2022, Walker was contacted by the drug testing facility asking for a letter from the clinic showing that he was being treated with methadone. On July 6, 2022, the methadone clinic doctor sent the testing facility Walker's treatment paperwork and later confirmed over the phone.  The nurse told Walker that it was a negative test and would be sent back to Longview Cable as such.

13. On July 14, 2022, Mandy Mahan with Longview Cable called Walker that morning and asked him if he could send her pictures of his methadone prescription and he sent two pictures. Walker also asked Mahan at the time if he for sure had the job because Walker had been requested for two other employment interviews with two different companies.  Walker told Mahan that he would cancel the other interview requests if he had the job with Longview Cable, which she

confirmed that day.

14.  On July 18, 2022, Mandy Mahan contacted Walker that morning via text and said "Good morning, I was able to get clarification from my corporate office.  Call when you have a moment."  Walker called Mahan and she told him that he had been cleared for starting work and she would email him the details on when he would start, the date and time.

15.  After not receiving an email from Mahan, on July 20, 2022, Walker messaged Mahan and asked her if she could send the email again because he had not received the first one. Mandy messaged Walker back and told him that she had written down the wrong email.

16.  On July 21, 2022, Walker messaged Mahan again telling her he would bring the doctor's letter saying that he could perform all of the essential duties required to work for Longview Cable as set forth in the written job description. Walker asked Mahan again if he still had the position stating he was excited to start.  Mandy messaged Walker back and said, "Yes, you are still eligible to be hired! Bring the paperwork in the morning and Mark Johnson would take it from there."

17.  On July 22, 2022, Walker took the letter from his doctor to Mahan at 8:00 a.m. expecting to see and talk to Mark again.  Mandy was very happy to see Walker, even stating that she was happy that he was there.  A few minutes passed while Walker was waiting, and she told him that Mark had to leave.

18.  That afternoon Walker messaged Mahan again telling her that he still hadn't heard from Mark, and  sent her his number again just to be sure.  Mandy messaged back and said that she would be sure to forward his number again to Mark.  Mahan messaged Walker again saying that it wouldn't be until Monday for him to see Mark because she had gone for the day.

19.  On July 25, 2022, Mahan sent Walker another text message saying "Good morning, I have been asked to contact your doctor requesting additional information concerning climbing

ladders and driving a vehicle. The doctor is out until Wednesday. Jason who works at the clinic said that he will get this emailed to me on Wednesday. I just wanted to update you."

20. On July 27, 2022, Walker messaged Mahan and told her that he had spoken to his doctor and his doctor said he had already sent an email saying that he can perform the required job duties, but he can't sign off on the driving requirements because it would make him a target if there was an accident. Walker informed Mahan that he had never had an accident or even a ticket in his 33 years driving career. Walker also told Mahan that his medication didn't alter him at all, and he had never had any problems like this before with other jobs. Mahan then messaged Walker and said "Unfortunately your doctor would not sign off on the driving requirement. This document would be required in order for you to be eligible for hire." Walker believes and therefore alleges that the requirement to have his doctor sign off on his driving was a pretext to discriminate against him because of the fact that he takes methadone. Walker has no restrictions on his driver's license.

21. During this whole process Walker went up to the Longview Cable office several times to do everything that they had asked of him, but none of it was good enough. Walker cancelled 2 other employment interviews based upon representations from Defendants that he had this job. Because of the representations made by Defendants regarding the job opportunity, Walker missed out on some good job opportunities. Walker was forced to sell his truck and his sports card collection just to catch up on bills, and he fell into a depression. This process really drained Walker emotionally. As a result of the illegal actions of Defendants described herein, Walker has sustained lost wages and benefits.

### III.   CAUSES OF ACTION

#### A.   **AMERICANS WITH DISABILITIES ACT**

22. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 21 as if fully stated herein.

23. At all times relevant to his claims, Walker has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2). More particularly, Plaintiff has physical impairments that substantially limit one or more of his major life activities, has a record of such an impairment, and/or was regarded by Defendants as having such impairments.

24. Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8). More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of his job.

25. Defendants failed to hire Plaintiff because of his actual or perceived disabilities in violation of the ADA.

26. The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect his employment status as an individual with a disability within the meaning of the ADA.

27. The unlawful employment practices complained of above were willful within the meaning of Section 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), as incorporated by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

28. The unlawful employment practices described above were intentional and were committed with malice or with reckless indifference to the federally protected civil rights of Plaintiff.

### IV.   DAMAGES

29. As a result of Defendants' violations of the ADA, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial.

30. As a result of this willful violation of the ADA, Plaintiff requests that he be awarded

all damages, to which he is entitled, as outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of the violation, plus interest.

31. In addition, Plaintiff requests compensatory damages equal in an amount to be determined by the jury. Plaintiff also requests any additional equitable relief to which he is entitled.

32. Plaintiff also requests reasonable attorney's fees and court costs.

## IV.  JURY DEMAND

33. Plaintiff requests trial by jury on all claims.

## V.  PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendants as follows:

a. Judgment against Defendants for Plaintiff's actual damages, including lost wages and benefits (both back pay and front pay), amount to be determined;

b. Judgment against Defendants for compensatory damages for the maximum amount allowed by law;

c. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

d. Costs of suit, including attorney's fees;

e. The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
bhommel@hommelfirm.com
Hommel Law Firm PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100 Telephone/Facsimile

ATTORNEY FOR PLAINTIFF